## PASCHAL v. THE STATE.

When an indictment charges the commission of an assault with intent to murder by using a knife such as was likely to produce death, the proof must show that it was a weapon of this character. This may be done by producing the knife itself or introducing other satisfactory evidence to establish the fact, but not by evidence which falls short of that character of proof which will justify an inference by the jury that the knife used was in truth a deadly weapon.

Argued April 16,—Decided May 11, 1906.

Indictment for assault with intent to murder. Before Judge Roan. Fulton superior court. February 24, 1906.

*R. R. Shropshire,* for plaintiff in error.

*C. D. Hill, solicitor-general,* contra.

EVANS, J. The plaintiff in error was indicted for the offense of assault with intent to murder. The assault was alleged to have been made with "a knife, being a weapon likely to produce death." He was convicted, and moved for a new trial, which was refused, and he excepts. The evidence disclosed that the accused had formerly lived in illicit relation with the woman alleged to have been assaulted, but that they were not living together at the time of the assault. She testified: About two weeks prior to the occurrence, she and the accused had a quarrel. On the night before she was cut, she had seen the accused. She was working at a restaurant, and late Sunday evening the accused sent a messenger to her with the request that he be allowed to see her. She told his messenger that if the accused wished to see her, for him to come to the place where she was at work. In about fifteen minutes the accused came to the restaurant, and just as he reached the door two men pushed it open. He called out the witness and said to her, "Alberta, you going home to-night?" She replied, "No, I don't think I will;" and he said, "Well, the reason I asked you is, I want you to go home and doctor on me; I am sick." She then said: "I am not going; you go and get Annie B. and let her doctor on you." He replied: "Well, I didn't come down here for a whole lot of argument; I came down here for you to go home, and I want you to go." She told him she was not going, and that she intended to lock her house up. Thereupon he grabbed her in the collar, jerked her up to him, put his knife in her side and started to lift her "up on the blade." When he put the knife in her side, she fell back and

screamed three times as loud as she could.   Her screams "drawed the police and a whole crowd of people, and that is all there was to it."   The accused cut her with a knife; she saw the knife but did not know its size.   She was stabbed only once; stayed in the hospital nine days.   Nothing was said by the accused when he cut her.   The witness said: "He just cut me and walked by and looked down on me, and when he got to the corner he run."   One witness saw the woman immediately after she was cut.   He testified that she was cut in the back and was "pretty bad off."   Another witness testified that she did not see the accused cut the woman, but she saw him "when he grabbed to cut her and she fell;" that when he turned her loose, she was cut; that there was no quarrel at the time.

This evidence is clearly insufficient to prove that the weapon used was one likely to produce death.   Under the indictment it was necessary to prove that the knife with which the assault was made was a weapon likely to produce death.   This allegation might have been established by direct proof as to the character of the weapon, by an exhibition of it to the jury, or by evidence as to the nature of the wound, or other evidence such as would warrant the jury in finding the instrument was one calculated to produce death. *Mathews* v. *State,* 104 *Ga.* 499; *Paschal* v. *State,* 68 *Ga.* 818.   But it is essential to show either by direct or circumstantial evidence that the weapon was of the kind alleged in the indictment.   In his statement the defendant claimed that the knife was a broken one, and that the person assaulted received the cut in her effort to disengage herself from his grasp.   No one attempted to describe the knife; no one testified as to the size or nature of the wound, and the jury was without evidence to find that the knife was a weapon likely to produce death.   The offense of assault with intent to murder may be committed without the use of a weapon likely to produce death, or without any weapon at all, if the assault be made to kill unlawfully, with malice aforethought.   But when it is charged in the indictment that the assault was made with a weapon likely to produce death, the character of the weapon enters into the description of the offense, and must be proved like any other essential feature.   *Judgment reversed.   All the Justices concur.*