## 53716. WATTS v. THE STATE.

SMITH, Judge.

The appellant was convicted by a jury of aggravated assault based on an indictment charging that he had committed an assault with a deadly weapon with intent to rob. The appeal contends the conviction was unauthorized because the court refused to grant a continuance when one of the defense witnesses failed to appear, because testimony was admitted concerning a prior armed robbery, because two jurors expressed some reluctance with the verdict, and because the state failed to prove an essential allegation of the indictment. Finding no merit in these contentions, and finding further that the evidence supported the verdict, we affirm the judgment of conviction.

1. Defense counsel had served a potential witness with a subpoena on the afternoon preceding the day of trial. When this witness, who purportedly would testify that he forced the appellant to commit the attempted robbery, did not show, the court issued an attachment but refused to grant a continuance. Granting or denying a continuance is reversible error only where the court has abused its discretion. *Smith v. State,* 126 Ga. App. 547 (2) (191 SE2d 304). When a criminal defendant moves for a continuance based on a witness' absence, the trial court's discretion is not abused unless the defendant has showed the court all of the prerequisites of Code § 81-1410. See *Keller v. State,* 128 Ga. App. 129, 131 (195 SE2d 767) (Evans, J., concurring specially). In this case, the record supports a conclusion that the appellant had failed to show the requirement "that he expects he will be able to procure the testimony of such witness at the next term of court." This enumeration is without merit.

2. The appellant was indicted on two counts, armed robbery and aggravated assault, and a motion to sever the charges was granted by the court upon a showing that the alleged armed robbery occurred nine days prior to the alleged aggravated assault. The state elected to proceed on the aggravated assault count, and at trial it introduced a witness who gave details of the previous armed robbery. The circumstances of the assault and the robbery were

similar as to method, time, location, and weapon. Thus, the testimony about the prior incident was relevant and admissible to show, at the least, motive and intent (*Foster v. State,* 230 Ga. 666 (198 SE2d 847)), especially in light of the appellant's contentions that he had been forced to commit the offense for which he was being tried.

3. The appellant contends that the jury's verdict was not unanimous because, when polled, two jurors replied that the verdict was theirs, "with question." They did, however, agree to the verdict, and even reluctant agreement is sufficient. *Herrin v. State,* 138 Ga. App. 729, 735 (13) (227 SE2d 498). The state must remove reasonable doubts from the jurors' minds; it is not required to erase *every* question. The record reveals nothing to show that the twelve jurors did not unanimously find the defendant guilty beyond a reasonable doubt.

4. Finally, the indictment charges that the assault with intent to rob was committed "by pointing a shotgun, a deadly weapon, at and toward" the victim. The evidence showed that the appellant grabbed the victim by the neck, held a sawed-off shotgun to the victim's head, and threatened to blow his brains out. The gun was partially covered by a drape or a bag of some sort, and it, in fact, was unloaded, was missing a trigger, and was incapable of being fired. The appellant contends the state failed to prove the shotgun was a deadly weapon, as alleged.

Whether a weapon legally is a "deadly weapon" has been analyzed in two contexts. In one, the fact that the weapon was deadly is used to support an inference that the defendant had a specific intent to kill. The intent element is thereby supplied to prove crimes such as assault with intent to kill, murder, and voluntary manslaughter. In the other context, the fact that the weapon was deadly is used to elevate a simple assault to an aggravated assault without relating the defendant's intent to the character of the weapon. In the former context, the emphasis is necessarily upon what the *defendant* was thinking: if he knew the gun was not loaded, then obviously he had no intent to kill with it, unless he used it as a bludgeon. In the assault context, however, the emphasis is generally upon what the *victim*

was thinking: was he reasonably apprehensive of bodily harm? If so, there was an assault. Was he reasonably apprehensive of death or mutilation? If so, then there should be an aggravated assault, for it appeared to him that the weapon was a "deadly weapon," and the weapon in this instance should be classified as a "deadly weapon." A man facing the muzzle of a firearm held by an assailant has no way of knowing whether the gun is loaded or whether it is functional; the prudent man will assume that it is and will respond accordingly. Why should the assailant thereafter be extended mitigation for his crime if he proves the weapon was not functional?

The view that an unloaded firearm is a "deadly weapon" in the assault context for purposes of raising a simple assault to an aggravated assault has been adopted in other states. See Bass v. State, 232 S2d 25 (Fla. App.); State v. Johnston, 207 La. 161 (20 S2d 741). In the present case, whether the weapon was deadly is relevant in an assault context and not in a specific intent context; if it reasonably appeared to the victim to be deadly, then the appellant should be held to the consequences of using a "deadly weapon."

The appellant cites the following cases for the proposition that the state must always prove the deadly nature of a weapon: *Paschal v. State,* 125 Ga. 279 (54 SE 172); *Jackson v. State,* 56 Ga. App. 374 (192 SE 633); and *Nelson v. State,* 4 Ga. App. 223 (60 SE 1072). These, and many other cases, are specific intent cases, and they correctly hold that a specific intent to kill cannot be inferred from the use of a weapon unless it is shown, as a matter of fact, that the weapon in the way it was used was likely to produce death. In such cases, there can be no "deadly weapons" per se, but in the assault context there can be. The shotgun in this case, in the way it was used as established by uncontradicted evidence, was per se a "deadly weapon." Accordingly, the proof conformed to the allegations.

*Judgment affirmed. Bell, C. J., and McMurray, J., concur.*

SUBMITTED APRIL 4, 1977 — DECIDED JULY 14, 1977.

*Louise T. Hornsby,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Assistant District Attorneys,* for appellee.